Speaking of that case, we have some recusals in that case, so what we're going to do is hear oral argument in the first two cases and then take about a 10-minute break or so and reconstitute the court, as they say. If any of y'all are here just for that case, be advised you've got at least 45 minutes or an hour before we get there. We would like to welcome to her first oral argument as a judge of this court, Judge Britt Grant. We're back up to 12. Let's hope that holds for a good while. The first case up is United States v. Johnson, and we'll hear first from Mr. Adler. May it please the Court, Andrew Adler from the Federal Defender's Office on behalf of Paul Johnson, Jr. with me at counsel table as co-counsel Ian McDonald. The bullet in Mr. Johnson's front pocket was not a weapon. Absent a gun to fire it, that freestanding bullet could not be used to assault an officer any more than a pebble, a marble, or a coin. And on top of that, Mr. Johnson had already been handcuffed at gunpoint, making it impossible for him to even access the bullet. Mr. Adler, when you arrived this morning, did you go through security? I did. You think they would have allowed you to bring bullets inside? No, Your Honor, but I believe this court's security protocol is not governed by Terry. But under Terry... Yeah, but we invited you to be here this morning. It's a public building, public proceeding. You weren't suspected of any wrongdoing. Police officer on a crime scene, unsecured, has a suspect, ammunition in his pocket, for his own safety, until this area is secure, I think he can seize the ammunition. We wouldn't let you bring it in the courtroom. Your Honor, our position is that under Terry, it's a strictly circumscribed search only for weapons. The Supreme Court has reiterated that limitation throughout its precedence in Ibarra, in Michigan v. Long, in Dickerson, and it has made clear it's a strictly circumscribed search only for weapons. That means a bullet in our position is not a weapon, because by itself it cannot be used to assault an officer. So your position is that it's not a weapon in and of itself, but it is at least, I think you've acknowledged, evidence of a weapon nearby, or maybe indicative of a weapon nearby. And further, then, is it your position that the Fourth Amendment requires the arresting officer to leave the bullet in the guy's pocket while he conducts this protective sweep of the area for the weapon? That is our position, Your Honor. Absent a weapon, that bullet by itself is not dangerous to the officer, particularly where the individual is handcuffed and cannot access it. Well, I'm sorry. Go ahead. Go ahead, please. Well, absent the ammunition, a firearm wouldn't have been dangerous to the officer by itself, would it? I'm sorry, Your Honor. Absent the ammunition, a firearm would not by itself be dangerous to an officer. Your Honor, the officer is rarely going to know that the firearm is unloaded. I understand. That's why I'm going to call it a hypothetical. Hypothetically, if the officer during the pat-down discovers a Derringer, let's say, he removes it or not, determines it's unloaded, under your position, he would be required to return that to the defendant? Our position is that firearms are weapons that are always seizable by an officer automatically. Why the difference? Both of them are essential to having a deadly weapon, ammunition and a firearm. Why is one any more essential than the other? Because the firearm is the device that in a suspect's hand can be used by pulling the trigger to kill an officer. Not without ammunition. Correct, Your Honor. But rarely will an officer know that the firearm is unloaded. My hypothetical, he's removed the Derringer from the pocket, looks at it, it's unloaded. Your position is he has to return it to the defendant? Well, if he does not have probable cause to believe that the possession of that weapon is a crime, then we believe he would be obligated to return it. But we do believe that he would be entitled to seize the weapon during a pat-down for protective purposes until he can determine whether it is loaded or not. In addition, there is the possibility that firearms can be used to bludgeon an officer, and we don't have that possibility with an object like a .380 caliber bullet, which in this case was a very What if it was a clip? Our position is the same if it's a clip, Your Honor, barring a reasonable belief that the clip could be used to bludgeon or be wielded in a manner that could harm the officer. Our position is the same in that regard. We've said an officer can seize the cylinder from a ballpoint pen because it could be used as a weapon. You're saying a clip poses less of a threat? We're not saying that. We're saying if, under the totality of the circumstances, an officer could believe that the object that he feels could be used to harm an officer, then he could seize it. And we agree with this Court's decision in Clay. We have no problem with that decision. How about harming someone else? I'm sorry? How about harming somebody else other than the officer? Oh, sure. We agree that Terry extends to others nearby as well as the immediate officer. We agree with that. But our position is that a bullet, especially one that's this tiny, that's less than an inch long, a third of an inch wide, it's a tiny object, cannot be used by itself to harm an officer. And on top of that, again, he's handcuffed. Might it tell the officer what kind of firearm he needs to be looking for in the area? I mean, if you know what round of ammo, it's one thing to recognize that it's a bullet, but you might not know what caliber it is. Sure, but he didn't know what caliber it was when he felt it, but he did know... He knew it was ammunition. Correct. And so when he sees it, looks at it, he can tell what caliber it is. It might help him know what kind of firearm he's looking for, right? Correct. Correct. And if he finds a firearm that's a .45, but it's a bullet for a .38, he might think, well, we need to keep looking. There might be a .38 nearby. Right. And we have no issue... We take no issue with the officers continuing their pat-down and looking in the immediate surrounding area. We think Terry authorizes that. Let me ask the question this way. You say the risk was so small as to render this unreasonable under the Fourth Amendment. I take it it would be your view that once they went into the apartment, found the girlfriend, she said, yeah, he belongs with me. Before they found the weapon, they would have been obliged to cut him loose, right? They would have been obliged to disengage the handcuffs and let him go on his way. Absent probable cause of occurrence. No, no, no. I forget. I'm talking about under the circumstances of this case. Would they have not, by your lights, been obliged to cut him loose while they were proceeding with their inquiry of a hot, immediate claim of a possible law and burglary? Once he established he was there because he lived there with that other woman, by your lights they'd have to cut him loose. Once they've determined that he was not... You see where I'm going with my question. If the answer to that is yes, they would have had to cut him loose with a bullet in his Wouldn't they have some reason to be concerned there might be a firearm nearby? He could have loaded the firearm and taken a shot at them. Was that an utterly idle and fanciful risk on their part? Your Honor, once they've determined that he is not a burglar, then they have no grounds to hold him anymore. There's no probable cause to believe that he has committed a crime and they would have to let him go. That is our position. Now, that does not mean that they are not able to continue patting him down very thoroughly. Let's assume they have patted him down. They find two things of interest. One, a bullet in his pocket they haven't reached in yet. And two, a nylon holster they haven't reached in and taken that out either. But they learn that he had reason to be where he was. He said, I was there with my girlfriend, I couldn't get in. It was a quarter to four in the morning. She wouldn't answer the door. They finally open the door, the girlfriend says, yeah. At that point, do they have any basis to hold him any longer? I would assume you would say no. At which point they have to cut him loose, even though he's got a bullet, and even though they have some reason to think there are firearms nearby. That is our position. The only reason they can continue to hold him. What do you possibly accomplish under the exclusionary rule by doing that? I always assumed the purpose of the exclusionary rule was that it was designed and intended to sanction deliberate or reckless misconduct in violation of the Fourth Amendment. Given what the magistrate judge found here, we don't have any indication that their behavior was deliberate or reckless, that they were just fishing for evidence here. Do we? That they were just fishing for evidence? Yeah. I mean, I understand the point, of course, as Terry is, the object is to secure the scene to ensure their safety for a fixed and limited period of time. But isn't that what they were doing here? And if the answer is yes, then why ought we to invoke the heavy medicine of the exclusionary rule and suppress? Because by reaching into the pocket, they were escalating an already very severe intrusion on Mr. Johnson. He was on his own property. He was confronted by multiple armed officers, at gunpoint, detained, forcibly handcuffed, forced on the ground, all before the pat-down even began. The Supreme Court in Terry said that even a limited pat-down is a severe and serious intrusion. That's the other half of this equation. Then we have no probable cause to believe that he's committed a crime, so that doesn't mitigate the intrusion. So our position that it was unreasonable, they're already at the pat-down. But it's an allowed intrusion, the Supreme Court says. And when they feel the ammunition, he knows it's ammunition. So whatever expectation of privacy there might be in the contents of his pocket is really eliminated, isn't it? Because he knows exactly what it is. Well, he did not know about the holster. And so by removing the holster, that's an additional item that the officers did not know about. But I thought your position was he couldn't remove the bullet. Our position is that he cannot remove the bullet, that's true. But it doesn't eliminate the privacy and the remaining contents of the pocket. In addition, going inside someone's pocket is an additional... Privacy interest is there in the bullet when he knows that's what it is. There is no additional interest in privacy interest in the bullet, but there is a security and liberty interest by going into somebody's pocket. There is also property interest by seizing items that the person has a lawful right to possess. So what if he had been holding a clear plastic bag full of ammunition? Could they have taken that? A clear plastic bag full of ammunition, our position would be the same. If there's no firearm to deploy that ammunition, then that ammunition is, again, just like a bag of marbles or a bag of coins. So that destroys your privacy argument, doesn't it? I'm sorry? That destroys your privacy argument, doesn't it, since he's holding it right there? I'm sorry. Maybe I misunderstood. If the officer has felt... If he's holding a clear plastic bag of ammunition, can officers take that? Oh, I see. Outside of the pocket? No. We think if the officer has a reasonable basis to believe that a bag full of metallic objects that are hard could be used to wield it to harm the officer, that he may be able to take that. We think that would be a different circumstance than a single lone bullet in a pocket that by itself could not be wielded in the suspect's hand to harm the officer. What if he's holding a single bullet in his hand? Can they take that? Our position would be no. Absent evidence of a firearm, no, because that bullet cannot be used by the suspect to harm the officer. Now, in our case, we also have the fact that he's handcuffed, so there's no way that he can even get it in his hand. So there's a double layer of protection going on here. Isn't part of the answer to the questions that Judge Pryor and Judge Marcus asked you that under Terry, this sort of removal cannot be used as a basis to search for evidence? It's just for officer and the protection of the public, but not as a way for an officer to figure out whether or not there's more evidence of a crime having been committed. That is our position. That's correct. In other words, you can't use a seizure ex ante to then say, oh, now that I've found this, I can now use it ex post to see if there's further evidence of a crime. Your Honor, we agree. You can't, assuming that there is a problem with taking the bullet, that problem can't be then justified by what it leads to later on. Of course. Of course. We agree with that. What if the other thing that it leads to later on, though, is something that involves officer safety, which is the bullet tells you what kind of caliber weapon you're looking for? But, Your Honor, the seizure at the first instance has to be lawful, and our position is that you cannot seize non-weapon. But if the interest is officer safety, might the bullet tell you something about that? It might, but the officers are entitled to look, again, to search and scour the immediate surrounding area for a firearm, regardless of whether they know it's a bullet or not. They're entitled to do that. In this case, they went even further due to the suspected burglary. They even searched the entire curtilage of the home, and they are, of course, entitled to search his person. And so our position is not that discovering the bullet has no value. It's just that you have to have a basis to do that in the first instance. Is there any indication from the facts of the case as it came out at the suppression hearing that the police went into the pocket because they were looking for evidence, given what the magistrate judge found? No. No, there isn't. Isn't it clear that at least their object was to secure and neutralize a possibly dangerous situation in the course of investigating a possible armed burglary? They weren't about fishing for evidence here. No. No, we're not. Is that not relevant in the mix of whether their conduct was unreasonable? But we're not disputing, Your Honor, the ability of the officers to conduct the pat-down in the first instance. What we're disputing is the ability of the officers to conduct the pat-down in the first instance. No, no, but I'm asking about reaching into the pocket and removing the bullet. There is no indication from the suppression hearings there that they went into that pocket because they were looking for evidence so much as they were seeking to secure and neutralize an area, at least from what the magistrate found. Isn't that clear? That is correct. But that doesn't detract from our position, because Terry — the question is not whether they were reckless in seizing evidence. The question is whether this item could reasonably be used to assault them. And if it's not, then Terry prohibits that search and seizure of that item. And so our view is that particularly given — No, but the reason I ask the question that way is because the whole theory behind exclusion and the exclusionary rule is to deter misconduct. Misconduct defined as either intentionally violating the Fourth Amendment or recklessly violating the Fourth Amendment. And that's what they would have been doing if they were fishing for evidence. But the record suggests quite the opposite here. That's the concern that I have. I understand that concern, Your Honor. Our position is that — is that Terry does not require a showing of bad faith or recklessness on the part of the officers. Terry drew a bright-line rule at weapons. Officers are well aware of that. They have been applying that for 50 years without problem. Our position is that if Terry required a showing of recklessness or bad faith or a search for evidence in order to suppress a clear non-weapon, then Terry would lose all — all meaning. And our position is that it is clear that a handcuffed suspect who cannot access an item that itself cannot be used to harm the officers, the officer should have known that that was not a proper basis for — for a seizure under Terry. It exceeded Terry's narrowly drawn authority. And I think I would draw this Court's attention to — If he was handcuffed and there was — and they found a gun, could they seize that? Yes, Your Honor. Our position that a firearm is always seizable — The handcuffing really doesn't answer the question, does it? The handcuffing, in our view, makes this an easy case because our position is that even without the handcuffing, they can't get the bullet because it's not an instrument of assault. But with the handcuffing, that — But that's your answer with — even if he wasn't handcuffed, isn't it? Correct. Our position is that even if he's not handcuffed, you can't get a lone bullet because by itself it cannot be used to — to assault an officer. They can continue doing the pat-down. That's why the pat-down is there, to see if there is a firearm. And if there, in fact, is a firearm, they can seize that. But you understand that if you were going to the airport, TSA is not going to let you through with one lone bullet. I believe that is probably correct, yes. And they're protecting the safety of the passengers and the airplane. Of course. And in airports, there are border concerns that are not present during a normal Terry stop. Fourth Amendment has been relaxed at airports and other border entries and exits. And I'm not — I don't believe that Terry applies fully in that context. But on the street, on a beat officer on the street in Opa-locka, Florida, Terry applies with full force. But you're asking that officer who has discovered this bullet, which is quite different than the other coins in your pocket or anything else, like that you started talking about today. A bullet is significantly different because it has the potential. Once you put it in a gun, it's very different than a coin in a pocket. Of course.  So it does relate to safety, an officer's safety. It relates in an indirect way to safety, but not if there's no gun. But surely you would recognize that when a police officer, especially in heightened circumstances where it's dark, could miss a gun. And, in fact, they have in a search. Of course. But Terry is not 100 percent guarantee of officer safety. If he feels a bullet, then he can intensify the search. He can handcuff the suspect if he was not already handcuffed. There are other things that he can do to safeguard the officer's safety concern. But we also have to remember there's another half of the equation, which is the significant intrusion on the individual that Terry was concerned about and that Terry was balancing. And Terry balanced that concern against the officer's safety concern and arrived at a middle ground of saying, we're going to allow these pat-downs, but they're going to be strictly circumscribed only for weapons, and that's it. And that's why in Dickerson, 25 years later, the Supreme Court said, we really meant what we said about that. There's a small object. It's not a weapon in the person's pocket. You cannot even manipulate that object. You cannot feel it with your fingers. If you do that, it's not a weapon. You've gone too far. But they didn't manipulate it in this case. He recognized it on the pat-down. And he did more than manipulate it because he went inside the pocket and removed it. And our view is that once it's not a weapon, then it's over. Then it's an unreasonable— Counsel, let me ask you this. It's not in the briefs and the parts of the evidence you're hearing. I read, don't disclose it, but when did they determine that he was a convicted felon? Right, you're correct, Your Honor, that's not in their record. What we do know, the district court made a factual finding that they did not know at the time of the seizure, which is the most important fact. We don't know when they made the determination. Obviously, it was before they charged him federally. We don't even know that they knew that at the time they arrested him because I think they arrested him because they determined that the firearms were stolen, not because he was a convicted felon. So let me make sure I understand this. If they had known that, they had probable cause, not only probable cause, but they had proof positive of a crime on the scene. I mean, it's a crime to possess ammunition after a convicted felony. Correct. Correct. So if the officer had left the bullet in his pocket and they had later determined that he was a convicted felon, arrested him, charged him, you would have no defense. He's guilty of 924C because he possessed ammunition. It would be a crime, but the initial seizure would be unlawful because they had no basis. No, no. Leave it in his pocket. Say, is that an unexpended round in your pocket? And the guy says, yeah, it's not a weapon. I've talked to my lawyer about it, just a round of ammunition. I later determined he's a felon. That's the crime, no less than if it had been a loaded firearm. But there is no basis in this record to know that the officers would have determined that he was a felon before they had to let him go. Well, it doesn't matter whether they let him go or not. They know thereafter, forever after, that he was in possession of the ammunition. And then they come forward with a charge after they determine he's a felon. You said three times in your briefs that they determined, not that they had reason to believe, but they knew it was ammunition. And indictment charges in the conjunctive, you just have to prove in the disjunctive, guilty. The only reason you don't lose the suppression motion on that ground alone, as I understand it, is the way the government phrased the conditional guilty plea in the plea bargain, right? I think I'm following, Your Honor, but I would say that there's just no evidence in this record to say that the officers would have eventually determined that he was a felon. Or that they would not have. They very well might not have. Along those same lines, though, I know we asked you to brief the question and we went on bonk on the question you've been talking about, but why wouldn't it have been inevitable that the guns would have been found anyway since the officer testified that he immediately recognized that it was a bullet in the pocket and that he immediately, upon recognizing that, thought there would be a gun around and that the gun was found within a foot of where your client was originally seen? Sure. So the record simply does not support the view that, based on just feeling a bullet, that they would have scoured the entire property and a hole in the fence and driven around the block to find firearms. The critical factor here was the holster. That's what the testimony reveals. Officer Williams on page 10 of the transcript testified that it was the bullet and the holster that led him to believe that there were firearms. Officer Horne, page 60, testified there was no other reason but for the bullet and the holster that led them to start looking for firearms. Except I'm willing to wager that the officer did not emphasize the word and. And you didn't ask the officer if you had not discovered the holster, would you have looked? But it's the government's burden, of course, to establish inevitable discovery. They never even made this argument throughout the district court, despite multiple opportunities to do so. They should have asked the officer that question. If you just felt the bullet, would that have led you to do what you did? And they never asked that question. There's nothing in the record to support that that's what would have happened. I see that I'm over my time. One more question, please. What if the crime that was reported had been armed robbery or someone had heard gunshots? Would that change your analysis? It may give the officers more suspicion to believe that the bullet was evidence of a burglary. But, of course, we don't have that here. We just have a lone bullet in the pocket, which is not indicative of a burglary. It's not something that's used to enter a home. It's not something that's stolen during a burglary. So our position is that a lone bullet has very minimal probative value, if any, with regard to an unarmed burglary that was reported here. Thank you, Mr. Adler. Mr. Golan. Good morning. May it please the Court. I'm Jonathan Golan on behalf of the United States. Terry's stated purpose of protecting officers' safety was, in the Supreme Court's own words, not just about identifying weapons, but in its own description of the purpose, to neutralize the threat of harm to officers and others in the area. And that is why it is unreasonable to expect an officer to leave a bullet in a suspect's pocket in an unsecured crime scene. Mr. Golan, can I ask before you ---- Let me ask you this. Go ahead. Go ahead, Chuck. Go ahead. Do you think that the Fourth Amendment recognizes the difference between a consensual search and an involuntary search? In other words, when I go through the metal detector at the airport or I come through the metal detectors in the courthouse in the morning, that's a voluntary consent to a search, as opposed to if I'm walking down the street to the courthouse from the hotel this morning and I'm stopped by an officer and I'm subjected to a Terry frisk, there's more of an invasion of privacy associated with a search like that. Do you think the Fourth Amendment recognizes the difference between voluntary consent to a search and an involuntary Terry stopping frisk? Absolutely. And I will agree with my colleague that I think that the Fourth Amendment protections are different, much more relaxed at an airport or courthouse. So I would agree with my colleague's answer to that question. But I think what it does show, the fact that the TSA or the courthouse officers would not leave a bullet in someone's pocket, goes to the objective reasonableness of what the officer was thinking at that moment, which is what the standard is under the Fourth Amendment and Terry frisks, is, is it objectively reasonable for the officer to think leaving that bullet in the pocket presents a threat in an unsecured crime scene? So, well, absolutely, the standards are different. The calculus in the officer's mind as to what a bullet represents is, is informed by how the TSA or courtroom officer would react to a bullet. Mr. Colan, from my personal perspective, this could have been a very easy case for the government. But the government did not argue good faith below, right? We did not argue good faith exception. We believe this was a legal search. Right. Did not argue a good, Leon, good faith exception below, right? Not good faith, but we argued, I want to, because I do want to disagree with my colleague as to whether we argued that there was independent grounds to search the area for weapons. So I believe the. That's a different, that's a different. Okay, as long as we're separating those two concepts, yes. So good faith, a mistake by the officer that he or she was doing what the law permitted, but it turns out that they were mistaken about that. You didn't argue that. No, we did not, Your Honor. Okay. You also did not argue inevitable discovery below. Not in the inevitable discovery document. We argued that the search of the area for guns was not fruit of an illegal search because it was an independent search and independently justified. So that's not inevitable discovery, but it is independent grounds that we did argue below and argued in our panel brief on pages 25 to 26. So I do not believe we've waived that. I'm not asking about the panel briefing. I'm asking about the district court proceedings. The government never argued inevitable discovery in the district court. Is that correct? We did not argue the inevitable discovery doctrine, which, again, I do want to distinguish from that this was an independent search. This wasn't a fruit of the Terry search. It was a non-fruit. It was a separate thing. Let me go to the next one then. The government never responded in the district court to whether or not the seizure, the finding of the guns was a fruit of the poisonous tree, even though Mr. Johnson raised that argument. The government put all of its eggs into the Terry basket and argued that it was a legal Terry frisk and seizure of the bullet. The government never responded to the fruit of the poisonous tree argument below, right? We did not make a fruit of the poisonous tree argument below, but, of course, the court on appeal could affirm what's based on the record. Not if you didn't raise the issue below, at least in my perspective. Fourth one. So no good faith, no inevitable discovery, right? No fruit of the poisonous tree. And the last one, no search incident to arrest that would have occurred later to follow up on Chief Judge Karnes' question. That argument wasn't made either, right? We did not argue that it would be an inevitable discovery and search incident to arrest. That is correct. So everything the government argued in the district court rode on whether or not this was valid under Terry and its progeny, right? As to the bullet or to the guns? The bullet. Reaching in to seize the bullet depended on the legality of the region. The bullet and the holster, I'm treating them together because they were both on Mr. Johnson's person. Everything in the district court for the government rode on whether or not what the officer did was permitted by Terry and its progeny. That's the only argument the government made below. You may be right about it, but that's the only argument the government pressed in the district court, right? As to the physical seizure of the bullet, again, I want to emphasize that the officer was aware of a bullet. So even if the reaching in is illegal, the officer, everyone agreed, the pat-down, during which he became completely aware of the bullet. In fact, the argument depends on the officer being aware of the bullet from the pat-down itself. So the officer could testify to the presence of the bullet, that he detected the bullet. Testify at what stage of the proceeding? If this had gone to trial, Your Honor. But you threw that argument away. I'm sorry, Your Honor. I'm not following your reasoning. You threw that argument away. Usually, conditional guilty plea, as you know, says, and if the defendant prevails on appeal, then he will be entitled to have the evidence suppressed, right? The physical bullet, I believe, Your Honor. The evidence that he's moving to suppress. If he prevails on appeal, he will be entitled to have that suppressed, and then the case will proceed without his guilty plea. He gets to withdraw the guilty plea. He doesn't get to have the case dismissed. It's the usual way, a conditional guilty plea. But you threw that away. In your guilty plea agreement, which your office signed, the United States and the defendant agree that an order suppressing the subject evidence or an appeal granting such relief is case dispositive. Where did that come from? I'm sorry, Your Honor. I don't have the answer to that question. But you do know what case dispositive means? Yes, Your Honor. All right. So if we hold that the district court should have suppressed the evidence, then you have already bound yourself in the United States, and you've agreed that the case will be dismissed, haven't you? We were certainly bound by the plea agreement, Your Honor, and by the acknowledgment that it would be dispositive, yes. Even though that if you hadn't made that concession, you could go back and the officer testifies, I felt a round of ammunition, I've been an officer X years, I know what they feel like, no question about it, and that's enough to convict him if the jury believes it. It would be, Your Honor, and if that's how this court construes the plea agreement, then we are absolutely bound by it. How else can we construe case dispositive as meaning anything other than case dispositive? Then that is the words that the government has pledged, and we are bound by it, Your Honor. It's almost throwing away these other defenses and then making it case dispositive. It's almost as if you had a law professor on leave in your office who said, this is a great issue, let's shape this up and see what happens. Because one, two, three defenses out the window, and then let's really put everything on it. I just wanted to give you an opportunity to answer that because I, it's, maybe in the give and take of bargaining, he wouldn't plead guilty but for it, but regardless of how it got there, you're bound by it. I am not going to say to this court that we are not bound by our words, if that is what the government signed, then absolutely we are bound by the terms of the fee agreement. Well, not only that, counsel. If it wasn't case dispositive, then what you in effect would have is an interlocutory appeal by the defendant. I'm sorry. I didn't catch the last part of your question, Your Honor. If the ruling on the suppression motion was not case dispositive and the defendant appealed under a conditional plea, then the appeal would in effect be an interlocutory appeal because even if he lost, he's still going to trial. Yes, Your Honor. That is why these cases involving a suppression motion are always case dispositive, the ruling. Yes. Do you agree with that? Yes. Or should be, I'll put it up. In the normal case, it is much clearer than here. They should be because we frown on interlocutory appeals on suppression motions. Yes, Your Honor. Counsel, let me ask you about that. We may frown on them, but the rules, whose constitutionality has been upheld, specifically prescribes that a defendant who prevails on appeal may then withdraw the plea, which by definition may be appeal interlocutory. Then that is what the government is bound by, Your Honor, and I'm happy to address the main issue, which is the reasonableness of the search for the reasons that have been discussed. I'd like to go into a few more reasons why the actions of Officer Williams were reasonable under the circumstances. Can I ask you a record question? You said a few minutes ago, you said that during the pat-down, he felt the bullet, felt what he immediately perceived to be a bullet. Where in the timeline of the pat-down did that occur? Was the pat-down complete? Is, like, the bullet the last stop on the pat-down? You know, because, like, for instance, the panel opinion says that there are no facts to support an inference that the suspect had a gun on him. That might be true if the feeling of the bullet is the last stop on the pat-down, but what if it's the second of six stops on the pat-down? I don't think the record is sufficiently detailed to say whether this was, you know, the very first thing that was felt and then he immediately reached in or, you know, what steps were taken during the pat-down. What the record does show, and there's been no indication or argument, that the pat-down was prolonged for an improper purpose, that the officer prolonged the manipulation, the things that Dickerson has warned against, the kind of extended manipulation that convert the pat-down itself into an illegal search. There's no suggestion of that. So what we can assume from the record and what's been argued and conceded is that the pat-down itself was a normal, unprolonged pat-down. And I see your point, Your Honor, but there's nothing that would let us to make that further conclusion that perhaps the very first thing he felt was a bullet and he immediately reached in before completing the pat-down. But what we can also say— Would it be different in your estimation if we knew for certain that the seizure of the bullet was, in fact, the last thing that happened? He had done a thorough pat-down, thorough frisk, and he's confident that the guy has no weapons. Then he feels the bullet and he thinks, and he pulls it out. Would it be different? I don't think so, and here's why. We've cited cases that recognize that pat-downs themselves are not perfect. Pat-downs could themselves miss a weapon. Also, as the district court found, the area itself— But presumably that's always true, right? I mean, presumably that's always true. Yes. What does the bullet add to the risk that the officer misses a weapon? Two things. First, the bullet itself suggests the presence of a weapon that— and, again, we're starting with a report of an armed burglar. So the whole—by the time we've gotten to the pat-down, we have sufficient reason to believe this could be an armed— I'm sorry, a report of a burglary and testimony established that burglars are often armed. So the point we start with the pat-down, we have someone who we have reason to believe could be armed. Now we feel a bullet. We have even more reason to believe he could be armed. I'll give you a contra— So the bullet itself, once the officer feels—if an officer feels a bullet, all he has to do is feel it without any independent evidence that there's a crime nearby. Once you feel the bullet, the officer can seize the bullet. Is that the government's position? No, Your Honor. I'm going to give you a counterexample that helps illustrate the distinction that I'm drawing. Because the Fourth Amendment analysis is very fact-specific, the facts here are additional facts, but let me give you the bare facts that I think speak to your question. Let's imagine a case where it's bright daylight hours and a wide-open beach. He's wearing a bathing suit that leaves little to the imagination, and all we have is a bullet. There, an officer would have much less reason to suspect that there could be a gun in the area or somewhere between the crime scene and the detention where the defendant— I'm sorry, the suspect is being patted down. So the officers can seize bullets under those circumstances in Opelika, but they can't seize them if the same circumstances took place in Ghibisgane? Not Opelika, Your Honor. A reported burglary crime scene at night where burglaries are often committed by multiple offenders who are armed— What if it's at night in Ghibisgane and you've got a different-looking defendant walking down the street? I think of a reported burglary crime scene, the same rules would apply in Ghibisgane as they would in Opelika, Your Honor. These are very fact-specific questions as to what reasonable actions of an officer, and when it's a predawn burglary scene that's not been secured for other suspects, the officer testified that suspects often toss the weapon when they come out. So the independent evidence that there's a gun nearby is it's in Opelika? No, Your Honor. I have to respectfully disagree with that characterization of our argument. It is a burglary scene, and in a burglary scene that are often committed by armed individuals, often multiple individuals in the dark. Where does that evidence come from? There was no testimony from the officers about this specific area. Their testimony was, we're experienced in investigating armed burglaries. There was nothing about their testimony that tied this area, this location, to an armed burglary. And the report to them was a burglary, not an armed burglary. The report was a burglary, not an armed burglary. But I believe the testimony from both Officer Horne and Officer Williams would show that they both, together, would testify that burglaries are often committed by multiple people. In general? In general. And their experience as officers, and that means their experience as their experience, are often committed by multiple people and are often committed by armed people. So their experience in general, not tied to this location, gives them probable cause to search Mr. Johnson as an armed burglar? In a predawn burglary report, yes. That's why I think it's not, that's why I think the dispositive fact is not the city of Oklahoma. Do you think it's probable cause? I'm sorry, not probable cause. This is a terrorist stop. So everyone includes, the defense has conceded by this point, and the panel, original decision conceded that the pat-down itself was justified, that the officers at the point of the patting down had reason to believe. But you're using as part of the justification that they believed this was an armed robbery. And what was the reason? I'm sorry, I want to be clear. I'm not saying that they believed it was an armed robbery. I'm saying they had reasonable suspicion to believe that this was the person who was identified in the burglary report, that burglaries that they investigate tend to be committed by often multiple people, often armed people, so they had the proper level of justification for a terrorist stop and frisk, that this is someone they have to treat as possibly armed and a threat to officer safety, and so they conduct the pat-down. When they conduct the pat-down, they've now detected a bullet. Officer Williams detected a bullet. It's undisputed, isn't it, that the officer was entitled to do a terrorist frisk? Absolutely, Your Honor. And I think even the panel decision affirmed that. Was he handcuffed in front or behind his back? What does the record reflect? Was he handcuffed behind his back while he was on the ground? I'm sorry, Your Honor, I don't recall that specific, whether the record shows it was in the front or on the back, but even if it was on the back, again, handcuffs help secure a situation, a suspect. But terrorist frisks have been routinely upheld. Doesn't Terry say that in order for the officer to seize the ammunition in a circumstance like this, for the protection of the safety of the officers, there would have to be an ability for him to pose a threat to the safety of the officer? Yes, but this Court and other courts have routinely upheld removal of items from handcuffed suspects found during a terrorist frisk. If, for example, in a hypothetical, this were a folded-up switchblade knife, no one would say you can't remove that from the pocket even though he's handcuffed because it would be difficult, but the case is acknowledged, not impossible, difficult for him to reach in and deploy it. So the question is, does a reasonable officer treat a bullet like he would some other instrument of assault? If it was a folded-up switchblade knife, we would have no question that that was reasonable. But we don't have a folded-up switchblade knife. We just have a bullet. And that goes to the point that the handcuffs themselves don't eliminate the threat. What did he do with the bullet? What did the officer do with the bullet when he took it out of the pocket? It was placed on the ground, and the words of the testimony is next to you. I'm going to have to, again, respectfully disagree with my colleague who suggests that that means immediately next to, like, you know, a foot. The record doesn't say whether it's a foot or six feet. But does that suggest, Mr. Colan, does that suggest something about the nature of the risk that the officer saw? That he not only went into the pocket to secure the area and neutralize the possibility that the bullet would find its way into a firearm, he puts the bullet on the ground somewhere within the vicinity of where the defendant is cuffed and lying down. Is that accurate factually? Yes. Where the officers are now aware of it, and a known risk is much less threatening than an unknown risk. Like the defendant, and again, I'm going to also have to disagree with my colleague's suggestion that the record could be construed that the suspect was left alone. Right. He wasn't left alone. Mr. Colan, if the fear was that maybe an accomplice was going to come down or somehow that bullet was going to find its way into a firearm in the vicinity, why on God's green earth would you leave the bullet lying freely on the ground? Your Honor, I— That not suggest something about the nature of the risk that the seizing officer perceived? The standard is what would an objectively reasonable officer do. And while I can't speak to the quality of the police officer's actions here, I can speak to the legality. And the standard of the legality is what would a reasonable officer under the circumstances be entitled to do. And if an officer removes it and leaves it too close, he probably shouldn't have done that. But in a bullet that's removed and is now on the ground, visible, where officers are aware of the situation and have gone, you know, extra steps to secure a situation, known risks, removed risks are lessened risks. Let me ask you this question. I'm reading from Terry, and it says, the Supreme Court said that this kind of search must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. Is it reasonably designed to discover either a gun or other hidden instrument for the assault of the police officer to remove the bullet, at least to know its caliber? Does that tell you something about what you might be looking for in terms of a gun? I think you're absolutely correct, Your Honor, when you offered the scenario that knowing the caliber helps the officers know what to look for in the area. But I think going back to the immediate retrieval, I think the cases have made clear. Holmes and Rochin have each said that that list of threats that Terry says should be neutralized, you neutralize the threat of the harm, isn't limited to traditional weapons. And the fact that the bullet is now an extra indication that there could be guns in the person because risks aren't perfect. It could be within the arm's reach. It could be somewhere between here and the fence where he came. Was the bullet a weapon or is the bullet a weapon? No, a bullet is not a weapon. But a bullet is a component that goes with the weapon. Is it contraband? I'm sorry? Is it contraband? It is not contraband in this case because they did not know at that moment that he was a felon. Mr. Colan, do you think your position would be the same if the police officers had not found any weapons nearby? If they had not found any weapons nearby? If all we had found was the bullet? Yep. And at some point... So that you can't now argue, oh, what they did was reasonable because by finding the bullet, they went looking for a gun and, you know, look at what, they actually found the gun. So if they found nothing, would your position be the same? It would still have been objectively reasonable to search the reported burglary scene for weapons. Did you argue objective reasonableness in the district court as a matter of pure Fourth Amendment law? Like, forget Terry, forget everything else. District court, you should use a reasonableness test under the Fourth Amendment and just determine whether the officers acted reasonably under the circumstances. We argued this was a justified legal application of Terry. I know. Terry's standard is objectively reasonableness. I don't — No. It's more than that. It's what Judge Pryor read to you. It's not just objectively reasonable no matter what. It's objectively reasonable to find those sorts of things. Yes. Did you argue objective reasonableness independent from Terry below? Perhaps I'm misunderstanding you, Your Honor, but the objective reasonableness standard is what is the — what would a reasonable officer conclude as to those items. Those are separate steps in the inquiry. You made that argument below. So we argued that this was proper under Terry. And what Terry says is, is it reasonable to think that those items are present? Okay. And that's what we argued, that this was proper under Terry, that a reasonable officer could believe there was a threat of harm. That is what Officer Williams himself said and the district court found and what we argued in the panel. And I think — and again, I also want to back up to one comment that my colleague made because I want to make clear what our position is, that it was not just the presence of the bullet in the nylon holster, but the fact that this is a burglary scene and the officer had an unsecured scene in the dark at night when — freed on hours, coming out of an alleyway. We don't have gone into the alleyway yet. We haven't seen if there are other suspects. The officer testified specifically that it is common for a suspect to toss a weapon when he comes out. So when he came out from the crime scene, reported crime scene, it was objectively reasonable to think that there could be guns. Now we discover a bullet. We have even more reason to believe there could be guns. We don't know if we've missed a gun in the initial pat-down. We don't know if there's another suspect. And it is a reasonable step for an officer to, I'm going to secure this bullet. I'm going to put it where we know where it is. That is lessening the risk to officers until we can determine whether there is a gun. I can't quite tell whether your position really is sort of a clear, bright-line rule that an officer is entitled to remove a bullet because it's an instrument of assault or otherwise, even on key biscayne from a guy wearing a Speedo, or whether under the thousand specific facts and circumstances of this case, because it's a burglary scene in Opelika, all of this stuff, this stuff, this stuff, it was reasonable here. Which is it? We are not asking the court to rule that a bullet in isolation in all circumstances would be sufficient to reach in. We are asking the court to apply the fact-specific Fourth Amendment tests that this court has applied and other courts have applied that under the totality of circumstances I mean, here's the reason I worry about this. And I actually thought this was a problem for your adversary. Now I'm wondering whether it's a problem for you. The Supreme Court has said a thousand times that police officers have to act on the spur in the heat of the moment. They need clear rules. You're asking to crunch a thousand factors about the sort of the specifics of the circumstances to determine whether or not they can pull the bullet out. I mean, what about the next case where it's not in Opelika. It's some other, you know, sort of slightly less crime-ridden area and there are only two officers instead of three securing the scene and the guy's handcuffed in front of his back instead of in back of his back. I mean, how are police officers supposed to administer that rule? Well, the standard that this and other courts have applied is the objective reasonable standards. And there's a certain aspect of the totality of the circumstance Fourth Amendment analysis that requires a certain amount of back-looking. There is no way around that level of analysis that would give an absolute right-line rule for every circumstance. Let's think about it this way, though. I mean, the kind of speedo in Keeba's game is much less likely the officer is going to be able to do a terry frisk there, right? I'm serious. I mean, what we're really asking about is the objective reasonableness of an officer who is entitled to do a terry frisk. Yes, Your Honor. Who has discovered what he immediately recognizes as ammunition, whether it's Yes. And that level of analysis is going to require a certain amount of looking back. But so hold on. So this is helpful. So your answer in response to Judge Pryor is so long as you are validly in terry land in the first instance, then there is a prophylactic rule that allows the officer to seize the bullet. I still wouldn't say that the court needs to go that far, Your Honor. But, yes, it is absolutely important that we recognize that at the point of the analysis where this case depends, we are already at the threshold of a valid terry stop. The defense by this point has conceded that, and the panel so found. So we are already starting at a point where the officers have reasonable basis to believe that this is someone who poses a threat and could be carrying items that harm the officer. So if I understand the government's position, then an officer can't just seize the bullet and comply with terry. There has to be some independent basis to believe that there's a threat to the And so I'm trying to figure out what that is here. There was a report of a burglary. But if there wasn't a report of a burglary, then there wouldn't be a terry stop to begin with, right? Absolutely. So that means whenever you stop, when an officer stops and conducts a terry stop and feels a bullet, when there's been a report of a burglary, the officer can seize the bullet? Well, it would depend on the basis for the terry stop. It does depend on, you know, what are the circumstances of the case. Here, the basis of the stop was a burglary, which is a crime that officers testified are often committed by armed people and multiple people. Those are facts that are relevant to the totality of circumstances. Wouldn't a better argument for you to make be if you're performing a valid terry stop, an officer may remove ammunition in court. If you're not comfortable with that, instead you could go into this fact-specific analysis that I'm talking about? I'm saying the court need not reach that far. But we've cited and rely upon the cases in our brief that show that in other situations where officers have detected shotgun shells, magazine clips, bullets, officers have removed them as part of a terry stop and have been upheld by the courts as reasonable actions of an officer. So while the court could make a rule that broad, we're saying in this case the court doesn't have to. There are extra facts here. But a bullet is not a meaningless object. And I see my time is up, so I'm going to wrap up. But a bullet is not a meaningless object. It is something that an objectively reasonable officer, like an objectively reasonable TSA agent or courtroom deputy, knows presents some level of threat. Bullets often go with guns. They are associated objects. And the officer here had reason to believe that here is a possibly armed suspect, here is a bullet, there could be a gun that goes with this bullet. And until we have secured the crime scene, a reasonable officer is going to remove and secure that bullet until he knows whether or not there are guns that could go with it. Thank you. Mr. Adler, eight minutes if you need it. So I think the facts of this case show why there cannot be a bright-line rule that Mr. Johnson is handcuffed. The government does not identify any plausible scenario in which Mr. Johnson could have used this bullet to harm anybody. So now the same question to you. If your position really boils down to the fact that this guy is handcuffed, maybe behind his back, maybe in front of his back, and that there are three officers present, and perhaps that the seizure of the bullet comes at the tail end of the frisk so there's no real reason to think that he's got a weapon on him, that doesn't sound like a very administrable standard to me. It sounds like the police are hopelessly at sea in the next case when the guy is handcuffed in front instead of in back. There are only two officers. Maybe you find the bullet midway through the frisk. Now what? Sure. I mean, I think there's no way around a fact-specific analysis, but one bright-line rule I think the Court can say is that weapons, traditional weapons, firearms, knives, clubs, the items that Terry identified are per se are seizable no matter what. Why isn't a bullet an instrument of assault? I know that we're not going to treat Terry like a statute, but if you look it up, it's an object or device designed for a particular purpose. Why doesn't a bullet satisfy that test? Because if there's no gun to fire it or to load it into, then it really is no different than a small, round, hard object. But a round, hard object, a pebble, is not designed for the purpose of assault. A bullet is, in fact, designed for the purpose of assault, within the sort of let's call it the plain meaning of Terry. Why not? Because by itself, the bullet, I mean, whatever the design of the object, its actual functionality is such that it cannot be used to harm an officer in the same way that a gun, knife, or club can by taking it out of your pocket. And so that's the difference there. But there are other items that are not designed to harm somebody that can nonetheless be used to assault them. And that's why we look at the totality of the circumstances for those items. That's why in Clay this Court said, well, it's a ball, it's a bearing of the inside of a ballpoint pen, but that might reasonably be believed to be a screwdriver, so we're going to allow that. And that, I think, will satisfy some of Your Honor's concerns about the need for flexibility. The officers don't need to be certain about what the item is. As long as there's a reasonable belief that it could be used as a weapon, they're entitled to seize it. It just so happens that in our case, the officer knew exactly what the item was, and it just so happened that it wasn't a weapon or something that could be used to assault the officer. And that's why this is an unusual situation. But we think in future cases, you're going to have to look at the totality of the circumstances of the particular case. And that's why we think when you do that here, the cuffing becomes a critical fact that helps us. The fact that this is a burglary and nighttime at 5 a.m., those facts have already been incorporated into the reasonable suspicion that allows them to do the pat-down in the first instance. And I also want to return to a point that Judge Marcus made, which is the officer's own behavior in this case shows that they were not frightened. They — the testimony is clear. Pages 41 and 57 of the transcript shows that when they removed the bullet and the holster from the pocket, they left them on the ground, quote, next to and, quote, beside Mr. Johnson. That's the testimony. Mr. Adler, is it your position that they knew it was a bullet before they removed it? Yes. Okay. And that they should have let him go on the spot, I suppose. Not on the spot. They should have — Well, after patting him down, they should have let him go. They should have patted him down. They should have searched the immediate surrounding area for a firearm. Oh. If there's no firearm — Wait a minute. Search the — and they still have him seized? Yes. That is part of the Terry stop under Michigan v. Long. They can search — So you're conceding that if they hadn't removed the bullet, the discovery of the gun is not fruit of a poisonous tree? We think the discovery of the firearms is the — is fruit of the poisonous tree because they were — But because they removed it. Correct. And — Just a minute. Is it your position that if they hadn't removed it, but suspected it was a bullet and searched the area and found the weapons, they could have had him detained that entire time? I think so because the discovery of the firearms came as part of the — Can you answer that one, yes or no, and then explain it? I want to make sure I understand the question. The question is whether or not. It's your position. If they hadn't removed the bullet and the holster, kept him down, searched the area and found the guns, that that seizure up to the time of finding the weapons was lawful? We're not challenging that as an unlawful prolongation or duration of the Terry stop. So we're not challenging that, Your Honor. What we're saying is that — I want to know whether or not — you're not challenging it. Correct. And so they could have seized him that period of time. Yes. I have a hard time understanding the relevance of going into his pocket. Because, Your Honor, our position is that they did not know about the holster until they removed the items from the pocket. And the testimony is that it was the bullet and the holster that led them to scour — Okay. And the holster. Correct. And, of course, a holster is made — In other words, well, they couldn't have — they wouldn't have known it was a holster. They knew there was something in there. They did not — correct. They did not know it was a holster. All they knew was a soft nylon material. They didn't testify it was shaped like a firearm or anything like that. But if I could just finish my response to Judge Marcus, not only did they leave the items on the ground next to him, they also holstered the — Let me ask you about the timeline factually. They go in. They pat him down. They find the bullet. They seize the bullet. They search the area. They find a firearm by the fence. They knock on the door. The girlfriend answers. She says, yeah, he belongs with me in this apartment. Help me with the sequence. What first, what second, what happens third? Do they go into the apartment before they find the firearm, or do they find the firearm first, or can we not tell from the record? The record is not clear on that. It appears that they happen around the same time. It's happening by different officers. Officer Williams goes — gets in his car, drives around the block, finds the firearms in the neighboring property. Officer Horn is at that point investigating the burglary for the first time, and at that point, he — So one officer goes into the apartment, and reasonably simultaneously, someone else is reviewing the perimeter to see if they could find a firearm. I believe that's accurate. Is that basically what happened? Yes, because Officer Williams testified it took him 15 to 20 minutes to drive around the block to find the firearms, and Officer Horn testified that it took about 15 minutes for the girlfriend to answer the door. So if you assume those started about the same time, those two events are happening around the same time. But I think a more important fact here is that even before they knew there was a bullet in the pocket, they holstered their firearms. So they knew just by handcuffing him and detaining him, he's on the ground. None of the three armed officers here thought that he posed any danger. That's before they even knew there was a bullet. But you would concede that a handcuffed person still presents some risk to officers, correct? Correct. And you would concede that a bullet, even if you don't know where there's a firearm and someone has been frisked, that that still presents some risk to an officer. They could have missed a firearm in a search. I'm not going to say the risk is zero. Okay. But I think— But so acknowledging that there is at least some risk in both of those things, why is an officer required to assume that risk? But he doesn't assume the risk, Your Honor, because he, if anything, the discovery of the bullet is going to intensify the pat-down search for a weapon. We think that stopping the pat-down to seize the bullet is counterproductive to officer safety. That's going to give the suspect more time to access the firearm. What they're going to do, and assuming, as Judge Newsom asked— But I trust you'll allow them to make their own determination of their own safety needs, Mr. Adler? Of course, Your Honor. We're not going to dictate the way officers need to do things. But our point is that in reality, as a matter of practice, they're going to go find the firearm. And that's why even if the bullet is the first thing that they feel, that's just going to intensify the search for the firearm. And that's the object that poses danger. And we believe that upholding the seizure here of a known non-weapon that is not accessible to an individual— Your argument, then, as I understand it, is that an officer doesn't have carte blanche, but he has to have an objectively reasonable belief that his safety is at risk. And that's why we believe that under the particular facts and circumstances of this case, that seizing a known non-weapon that was in— We got that, Mr. Adler. Thank you. Thank you for your argument. Thank you. Next case up is LaGarra — I'm sorry, Lewis v. City of Union City. Thank you. Thank you.